UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BRIAN K. COLEMAN,

        Plaintiff,

        v.                                 Case No. 21-cv-0940-bhl

VILLAGE OF SHOREWOOD,
MILWAUKEE COUNTY,
WELLPATH MEDICAL PROVIDER,
ANTHONY MILLER,
JOHN W. SCHAAL,
JOHN DOE,
WELLPATH NURSE BRANDON, and
JANE DOE,

        Defendants.

## SCREENING ORDER

      Plaintiff Brian Coleman, who is currently confined at the Milwaukee County Jail and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. On October 1, 2021, the Court screened and dismissed the original complaint for failure to state a claim upon which relief could be granted, and it gave Coleman an opportunity to file an amended complaint. Dkt. No. 7. Coleman filed an amended complaint on December 7, 2021. Dkt. No. 10. The Court will screen the amended complaint as required by 28 U.S.C. §1915A.

### SCREENING OF THE AMENDED COMPLAINT

      The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief

from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

### ALLEGATIONS OF THE COMPLAINT

Coleman is an inmate who has been housed at the Milwaukee County Jail and the Milwaukee House of Corrections. Dkt. No. 10 at 2. He names as Defendants John Doe A (a Shorewood police officer), the Village of Shorewood, Milwaukee County, Wellpath Medical Provider, Anthony Miller,

John W. Schaal, John Doe B (the Wellpath Medical Director for Milwaukee County Jail), Wellpath Nurse Brandon, and Jane Doe (a Wellpath physical therapist). *Id.* at 1.

Coleman's allegations begin with an injury he sustained on January 31, 2021, while being arrested by John Doe A. Dkt. No. at 3. Coleman states that during the arrest he injured his neck and back and dislocated his right shoulder because Doe A "attack[ed]" him. *Id.* After his arrest, the Shorewood Police released Coleman without any citations or charges filed against him. *Id.* at 3–4. Coleman also admits, however, that another state criminal case is pending against him for resisting or obstructing an officer, in which Doe A alleges that Coleman attacked him.[1] *Id.* After his release, Coleman states he was able to reduce/reset his right shoulder on his own, because he "is a trained and experienced orthopedic physical therapist." *Id.* at 4.

Less than a month later, Coleman was arrested again, this time by Shorewood Police Officers John Schaal and Anthony Miller. *Id.* Coleman alleges that he told Schaal and Miller of his existing injuries, but they disregarded his claims and roughly and negligently mishandled him, resulting in his right shoulder being dislocated again. *Id.* Coleman repeatedly told Schaal that his arm was being injured by the position he was handcuffed in, but Schaal disregarded his concerns. *Id.* at 4–5. Soon after, however, Coleman demanded medical intervention for his shoulder, and he was taken by ambulance to Ascension Hospital. *Id.* at 5. At Ascension, he received a CT scan and X-Ray, which showed a possible neck injury. *Id.* Coleman was released from the hospital with orders to follow up with medical staff at the Milwaukee County Jail. *Id.*

Since then, Coleman has been incarcerated at the Milwaukee County Jail and the Milwaukee House of Corrections. *Id.* at 5–6. While incarcerated, Coleman has received medical treatment from the contracted medical care provider, Wellpath. *Id.* Coleman claims that the

---

[1] *State of Wisconsin vs. Brian Keith Coleman*, Milwaukee County Case No. 2021CM2243, https://wcca.wicourts.gov.

medical care he has been provided varies widely, and he is most often treated by nursing staff, not doctors. *Id.* at 6. Coleman claims that the nursing staff "are supposed to be providing care under the supervision of doctors." *Id.* Further, Coleman states that the process of obtaining care is filled with mistakes, such as being transported to a hospital for an appointment, but the doctor was not available, and his appointment had to be rescheduled for over a month later. *Id.*

Additionally, Coleman states that he was referred to physical therapy "in house" and he has only been seen four times by the physical therapist, Jane Doe, over a nine-month period. *Id.* Coleman claims that typical physical therapy for his shoulder would be once or twice a week for four to six weeks before checking in with an orthopedic physician to determine future care. *Id.* Coleman states that the minimum standard of care he should have received was four to six visits over one to two months and then a follow-up. *Id.*

According to Coleman, an orthopedic surgeon ordered that he receive an MRI to determine the treatment plan for his shoulder in the "late summer of 2021," but Wellpath medical staff did not schedule the MRI. *Id.* at 7. In August 2021, Coleman asked Wellpath nurse Brandon about the MRI and Brandon looked into the situation. *Id.* Coleman states that Brandon told him that "even though the orthopedic specialist ordered the MRI, our (Wellpath's) Medical Director (John Doe B) doesn't think you need the MRI and won't order one for you." *Id.* Coleman responded and asked Brandon about the standard of medical care. *Id.* To which, Brandon apparently responded "well there's the standard of medical care and then there is jail medical care." *Id.* Coleman claims that Brandon's statement is an admission that the medical care Wellpath provides inmates is "far below standards of care accepted by the medical community at large" and "the blind-eye and negligent behavior of the [Wellpath] Medical Director." *Id.* Further, Coleman states that the John Doe B, the Wellpath Medical Director, has never examined him. *Id.*

For relief, Coleman asks that the guilty parties be held accountable and reprimanded/punished, proper procedures to be put in place so such an injury cannot happen again. *Id.* at 8. Further, Coleman seeks medical and mental health services to be covered now and, in the future, until he is recovered. *Id.* Lastly, Coleman seeks legal fees and $750,000.00 in damages for his pain and suffering and lost wages. *Id.*

## ANALYSIS

"To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that he or she was deprived of a right secured by the Constitution or the laws of the United States, and that this deprivation occurred at the hands of a person or persons acting under the color of state law." *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)).

To start, the Court previously informed Coleman that he may join multiple defendants in a single case only if he asserts at least one claim against each defendant that arises out of the same events or incidents and involves questions of law or fact that are common to all the defendants. *See Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012). The Court further noted that Coleman's medical care claim and his excessive force claim likely belong in different lawsuits as they involve different defendants, at different entities, with different underlying facts. Dkt. No. 7. Coleman did not follow that instruction and put both in his amended complaint.

The Court will dismiss without prejudice Coleman's excessive force claims against John Doe A, Village of Shorewood, Anthony Miller, and John Schaal because those claims are not properly joined in this case. *See* Fed. R. Civ. P. 21. As the Seventh Circuit has explained, "[u]nrelated claims against different defendants belong in different suits . . .." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Coleman's claim that officers used excessive force while

5

arresting him and his claim that the treatment provided to him by jail officials was unreasonable will not have common questions of law or fact, so those claims must be brought in different lawsuits.

Next, the Court will address Coleman's remaining medical claims against Milwaukee County, Wellpath Medical Provider, John Doe B, Wellpath Nurse Brandon, and Jane Doe. Because Coleman is a pretrial detainee his claim comes under the Fourteenth Amendment. *Miranda v. Cnty. of Lake*, 900 F.3d 335, 350-51 (7th Cir. 2018). To state a claim under the Fourteenth Amendment, the plaintiff must establish that he suffered from an objectively serious medical condition and that the defendants—acting purposefully, knowingly, or recklessly— responded or failed to respond in a manner that was objectively unreasonable. *See Miranda*, 900 F.3d at 352–53; *Williams v. Ortiz*, 937 F.3d 936, 942–43 (7th Cir. 2019).

As Coleman is receiving medical care for his shoulder injury, the Court will assume he has satisfied the objectively serious medical condition prong. Coleman's alleges that Jane Doe has not provided him with enough physical therapy sessions to satisfy the accepted medical standards. Coleman also alleges that John Doe B has decided that he does not need an MRI despite an outside doctor ordering one and John Doe B never examining him. Whether the actions from Jane Doe and John Doe B are objectively unreasonable is a fact-intensive inquiry, and the assessment of those facts must be left for a later time. At the screening stage, the Court finds that Coleman has sufficiently stated a Fourteenth Amendment unreasonable medical care claim against Jane Doe and John Doe B.

Coleman has not sufficiently alleged facts to attach liability against the remaining Defendants – Brandon, Milwaukee County, and Wellpath Medical Provider. First, none of the alleged facts attach liability to Brandon. Instead, the complaint shows that Brandon was

6

responsive to Coleman's questions and investigated on his behalf. Coleman has not alleged that Brandon did not provide him objectively reasonable medical care. Therefore, Brandon will be dismissed from this action.

Next, Coleman may not proceed against Milwaukee County and Wellpath Medical Provider. Generally, only individuals who are personally involved with the constitutional violation can be sued under §1983. *Minix v. Canarecci*, 597 F.3d 824, 833–34 (7th Cir. 2010). In some circumstances, plaintiffs can sue municipalities for constitutional violations under §1983. These are called *Monell* claims. Under *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 690 (1978), municipalities and other local governments may be liable for an employee's conduct if the employee injured the plaintiff in execution of an official policy, custom, or widespread practice. *See Collins v. City of Harker Heights, Tex.,* 503 U.S. 115, 122 (1992); *Petty v. City of Chi.,* 754 F.3d 416, 424 (7th Cir. 2014). Coleman has not alleged any facts regarding the policies or customs of Milwaukee County or Wellpath Medical Provider. Instead, he provides specific examples of events he believes are unacceptable, such as an outside doctor not being available when Coleman was taken to see him, and the conclusory statement that that an employee's statement is an admission that the medical care Wellpath provides inmates is "far below standards of care accepted by the medical community at large." Coleman's conclusory statements are not sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Therefore, Coleman has failed to state a *Monell* claim against Milwaukee County or Wellpath Medical Provider and the Court will dismiss them from this action.

Accordingly, Coleman may proceed on a Fourteenth Amendment unreasonable medical care claim against Jane Doe and John Doe B. Because Coleman does not know the names of the defendants, Jane Doe and John Doe B, he is suing, the Court will add Milwaukee County Sheriff

7

Earnell R. Lucas, as a defendant for the limited purpose of helping Coleman identify the names of the defendants.  *See Donald v. Cook County Sheriff's Dept.*, 95 F.3d 548, 556 (7th Cir. 1996).  The Court will order the Marshals to serve Sheriff Lucas with Coleman's amended complaint and a copy of this order.  Sheriff Lucas does not have to respond to the complaint.  After Sheriff Lucas' lawyer files an appearance in this case, Coleman may serve discovery upon Sheriff Lucas (by mailing it to his attorney at the address in his notice of appearance) to get information that will help him identify the names of the defendants.

For example, Coleman may serve interrogatories (written questions) under Fed. R. Civ. P. 33 or document requests under Fed. R. Civ. P. 34.  Because Coleman does not state a claim against Sheriff Lucas, Coleman's discovery requests must be limited to information or documents that will help him learn the real names of the defendants he is suing.  Coleman may not ask Sheriff Lucas about any other topic, and Sheriff Lucas is under no obligation to respond to requests about any other topic.

After Coleman learns the names of the people he alleges violated his constitutional rights, he must file a motion to substitute their names for the John and Jane Doe placeholders.  The Court will dismiss Sheriff Lucas as a defendant once Coleman identifies the defendants' names.  After the defendants have an opportunity to respond to Coleman's complaint, the Court will set a deadline for discovery.  At that point, Coleman may use discovery to get the information he believes he needs to prove his claims.

Coleman must identify the names of the Jane and John Doe defendants within sixty days of Sheriff Lucas' attorney appearing.  If he does not or does not explain to the Court why he is unable to do so, the Court may dismiss his case based on his failure to diligently pursue it.  Civil L. R. 41(c)

8

Case 2:21-cv-00940-BHL   Filed 02/02/22   Page 8 of 10   Document 11

**IT IS THEREFORE ORDERED** that the Clerk's Office is directed to file Coleman's proposed amended complaint (Dkt. No. 10) as the operative complaint.

**IT IS FURTHER ORDERED** that Defendants John Doe A, Village of Shorewood, Milwaukee County, Wellpath Medical Provider, Anthony Miller, John W. Schaal, and Wellpath Nurse Brandon are dismissed from this case.

**IT IS FURTHER ORDERED** that the United States Marshal shall serve a copy of the complaint and this order upon Milwaukee County Sheriff Earnell R. Lucas pursuant to Federal Rule of Civil Procedure 4. Coleman is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2)–(3). Although Congress requires the Court to order service by the U.S. Marshals Service precisely because *in forma pauperis* plaintiffs are indigent, it has not made any provision for these fees to be waived either by the Court or by the U.S. Marshals Service. The Court is not involved in the collection of the fee.

**IT IS FURTHER ORDERED** that Sheriff Earnell R. Lucas does not have to respond to Coleman's complaint; however, he must respond to Coleman's discovery requests as described in this order.

**IT IS FURTHER ORDERED** that Coleman must identify the real names of the Doe defendants within sixty days of Sheriff Earnell R. Lucas' counsel appearing in the case. If he does not or does not explain to the court why he is unable to identify their real names, the court may dismiss his case based on his failure to diligently pursue it. Civil L.R. 41(c).

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

9

Coleman is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin on February 2, 2022.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge